· FRANCIS M. SUTTON, petitioner and appellant,

*v.*

LOUISE S. SUTTON, defendant and respondent.

[Argued November 28th, 1913.   Decided March 16th, 1914.]

On appeal from a decree in chancery advised by Mr. Charles J. Roe, advisory master, who filed the following conclusions:

The petition in this cause was filed on December 17th, 1912. The petitioner seeks a divorce from his wife, the defendant, for desertion since the month of August, 1908.

This desertion is based solely on the claim that the defendant, although performing all other wifely and motherly duties, refused to her husband, the petitioner, sexual intercourse.

The parties were married in 1892, and three children, the youngest being sixteen years of age, is the result of this union. It is admitted that since 1898 the permanent residence of the parties was at Allenhurst, New Jersey, although the defendant says that since January 1st, 1911, she, by advice of counsel, has claimed Brooklyn as her permanent home—Brooklyn being the place where both parties have lived during the winter. In their testimony both parties date their differences from the time of their marriage, but I fail to find any serious trouble between them prior to 1908. There had been disputes between them about minor matters which were afterwards continually revived and exaggerated in subsequent communications with one another. One of the earliest of these disputes arose over the petitioner objecting to having his wife's mother live with him, but this was early settled, the husband buying a residence in Brooklyn and placing the title to the same in his wife's name. This property was subject to a mortgage of $10,000. It is admitted that there was an agreement between the parties to occupy separate sleeping rooms—rooms which were accessible to

one another when they lived at their Brooklyn home. The summers were passed at Allenhurst.

In the year 1908, the defendant, wife, had discovered that her husband, the petitioner, had been guilty of infidelity, and she says that he confessed his crime to her. He does not deny this. At all events, as a result of this discovery, it is evident that the petitioner exerted himself to placate his wife. He gave to his wife at this time $10,000, which was the amount of the mortgage on the Brooklyn residence, and there was a reconciliation between the parties. At all events the parties resumed for a short time marital relations. Shortly afterwards their relations became more hostile than ever. The cause of this is not evident. It may have been due to the suspicions of the defendant arising out of the old fault of her husband. She says it was because he humiliated her by publicly boasting of her having by sexual intercourse condoned his offence. At all events their cohabitation ceased and their relations became estranged. In the winter of 1908 and 1909 a mutual friend attempted to reconcile them, and this was accomplished in February, 1909, when the petitioner and defendant met and agreed on a reconciliation. Almost immediately after this was broken because the defendant wanted the petitioner to wait for a period before they should have sexual intercourse. This demand angered the petitioner and he at once broke off any further attempt to reconcile with his wife. In this affair I cannot but think that the petitioner was entirely blamable. His attitude appears to have been that all he cared for at that time was sexual intercourse with his wife—sexual intercourse following a reconciliation after a season of bitter quarrels and bickerings, without any effort on his part to regain the affection of his wife, but for the simple purpose of using her to gratify his sexual indulgence. After this period I am entirely satisfied, by the evidence, that the petitioner's conduct towards his wife, living together in the same house a great part of the time, was of such an ugly and disagreeable character that it seemed designed for the purpose of making the situation of the wife unendurable. While the defendant was performing all the household duties of their home and taking care of petitioner and their children, he would rarely speak to his wife, when in her presence sit and glare at her, accuse her of running after men,

and deliberately, both in his actions and his conduct, doing all he could to estrange his wife. In June, 1909, in the presence of a witness, the petitioner came to his house in Brooklyn and packed his trunk, and after showing violence to his wife left the house and went, as his wife learned afterwards, to his home at Allenhurst without inviting her to accompany him. After he had gone to Allenhurst the wife received a letter from the holder of the mortgage saying that the interest was unpaid upon the mortgage on the Brooklyn residence. The petitioner had theretofore paid the interest upon that mortgage and the assessments upon the property. The wife at this period consulted a lawyer in Brooklyn, and on July 14th of the same year she wrote her husband a letter referring to that subject, and to the effect that she had consulted this lawyer. The petitioner says that the reason that he did not pay interest was that he wanted his wife to convey the property back to him. The petitioner produces a letter written by his wife on July 14th, 1909, which seems to have been an answer written to some letter that the husband had written to his wife on July 9th, which is not produced in evidence, but which evidently had reference to the payment of the interest upon the mortgage. In this letter the wife speaks about the petitioner being ungenerous in leaving her in the difficulties in which she is in, and refers to her lawyer whom she says she had consulted. We have no reply to this letter, but we have a letter written by the defendant bearing date July 27th of the same year, and indicating that it is an answer to certain questions that her husband has proposed.

In the letter she speaks of her desire for a reconciliation, and says that he will not make one step towards it, and refers to a suggestion that he makes with regard to their having sexual intercourse, and states to him that while her confidence in him is gone it would take time and patience to restore her feeling of affection, but that it could be accomplished again if he would do his duty, and she censures his arbitrary methods with his family and tells him why it is necessary for her to consult a lawyer, and expressly states that she will come to him at Allenhurst. On September 2d, of the same year, the petitioner writes to the defendant a letter in which he indicates that he is pleased at her willingness for a reconciliation. Subsequent to this a corre-

spondence takes place between the lawyers of the petitioner in Brooklyn, in which the differences between the parties are discussed, and which seems to have broken off any attempt on the part of the petitioner to effect a reconciliation with his wife. He returned to the home of his wife in Brooklyn and continued to live in the same house with her. During this period the defendant and petitioner seem to have lived together; but there is very little evidence of the manner in which they lived during this year, but it evidently was, as I take it, of the same character in which they had lived during the preceding years. One of the witnesses says that in 1910 the petitioner talked about his wife being intimate with her brother-in-law, and that his treatment of her was of a very unkind character. In the spring of 1911, the husband went away on a business trip to South Africa, and while he was gone, or just before he went, his wife filed a complaint against him in New York for divorce on the ground of adultery, alleging the adultery to have occurred in 1907. To this complaint he filed an answer alleging that his wife, between the 1st of July, 1907, and the 1st of November, 1908, had condoned the offence. In that suit, which is in evidence, he filed an affidavit which was taken on February 12th, 1912, in which the petitioner swears that since 1907 he had lived in the same house with his wife, except when absent on business trips, or at his country residence in Allenhurst, and during said time cohabitated with his wife, and during all of said time, except during his absence, to January 12th, 1912, he had lived in the same house with his wife and children, or some of the children, eating at the table with them and occupying a bedroom with access open between his room and that of his wife, except during a few nights, not over a week altogether, when the door was locked between her bedroom and his. In December of 1911, the defendant wrote letters to her husband asking him not to come to the Bainbridge street house, Brooklyn, and in fact locked the door upon the petitioner. This she explains was done under the advice of her counsel and because she had her suit for divorce for adultery pending in New York. This suit was discontinued by mutual consent in May, 1912. After this time, and up until the time of the bringing of this suit, a number of letters passed between the petitioner and defendant. The bur-

den of these letters on the part of the defendant was a request for her husband to return to her, and his answers to these were evasive, filled with recriminations, and he finally expressed a desire that she should leave the house. In fact they were not fair and frank answers to her efforts to conciliate their differences. On November 12th, prior to the bringing of this suit by the petitioner, the defendant had brought a suit for separation in the State of New York.

I do not think that for the purpose of deciding this case that it is necessary for me to consider the effect of this suit brought by the wife against her husband in the State of New York— whether it is a *bona fide* suit or otherwise; but all that I have to deal with is the evidence which is laid before me in the present cause.

From this evidence so recited I do not think that I am obliged to decide this case on the conflicting doctrine of whether the withdrawal of one of the parties from sexual intercourse is of itself alone a cause for desertion. I do not consider that the facts in this case make it necessary to apply that principle.

It is clear to me from the evidence in this case that the petitioner has failed in his duty as a husband to the defendant. He expressly says that since July, 1909, he has not asked his wife to have sexual intercourse with him, for the reason that he believed such request would be unavailing. The defendant, on her side, says that if he had requested her to have sexual intercourse, that at certain times and on certain occasions, she would have been willing.

Admitting that the withdrawal of one of the parties from sexual intercourse is in itself a complete desertion under our statutes, the obligations and duties imposed on the other party still remain. The petitioner cannot demand relief on account of a grievance which he has helped to make.

This is quite a different principle from that embraced in *Moores* v. *Moores, 16 N. J. Eq. (1 C. E. Gr.) 275,* which held that conduct which would justify desertion must be such as would constitute a ground for divorce. It comes more properly under the principle of connivance which applies to all suits for divorce on whatever ground instituted.

*2 Bish. Mar. & D.,* or under the principle laid down in *Mc-Gean* v. *McGean, 63 N. J. Eq. (18 Dick.) 285,* and *Hooper* v. *Hooper, 34 N. J. Eq. (7 Stew.) 93,* and that is that a suit for the cause of adultery can only be sustained where the desertion is without the petitioner's fault or consent.

If the defendant refused, in August, 1908, to have sexual intercourse with her husband, although at the time they were living together and sleeping in accessible rooms, and by that refusal we assume desertion began, certain duties then devolved upon the husband to end such assumed desertion. Unless there is evidence of a settled determination on the part of the wife to desert, where the husband has not contributed to the desertion, as laid down in *Hall* v. *Hall, 65 N. J. Eq. (20 Dick.) 709,* the duties involving on the husband are the necessary advances to bring an end to the separation.

As classified in *Bid. Div. 84, 85,* these advances must be sincere, just, and in fact be real advances to end the desertion.

It would be a hard rule to establish that if the wife has refused sexual intercourse to her husband on one or more occasions that the husband can thereafter treat her with repulsion and act towards her with scorn and indignity, and do everything he can to estrange his wife's affection for him and to estrange himself from her, and then say that it is useless for him to approach her again because her affection towards him being completely gone would make it unavailing. Certainly, it should be unavailing with a virtuous woman, and the petitioner knew it would be; but here again he made it so. His approaches were not just or sincere.

In January, 1912, the defendant did drive the petitioner from their home in Brooklyn, by the advice of counsel, she says, that it was not proper for them to live together during the pendency of a suit for adultery; but after this suit was settled in the May following she, by letters and communications, again and again solicited his return and was as constantly repulsed by the petitioner.

So, that I am satisfied that since May, 1912, and up until the commencement of this suit, the petitioner himself was in fact the deserting party.

Under all of the circumstances of this case, and in view of the fact that the parties are both past middle age, and in view of the fact that they have children depending upon them, in view of the fact that since May, 1912, the petitioner himself has actually deserted the defendant and refused to return to her, I must find that the petitioner has not sustained his allegation that the defendant, his wife, has willfully, obstinately and continuedly deserted him up until the time of the filing of his petition, and will therefore advise a decree dismissing the petition, with costs.

*Mr. Gilbert Collins (Messrs. Hartshorne, Insley & Leake* on the brief), for the appellant.

*Mr. Albert I. Drayton* (with whom was *Mr. Oliver P. Carpenter,* of the New York bar), for the respondent.

PER CURIAM.

The decree of the court of chancery will be affirmed, for the reasons given by the learned advisory master.

There has been some criticism in the argument and brief, of certain details of his findings of fact as unsupported by the evidence. We have examined the evidence in the case and find no errors of fact in the conclusions of the master that operate in any way to impair the correctness of the result reached by him, or that call for any special comment on our part.

The award of a counsel fee below is likewise affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER—12.

*For reversal*—None.